UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **ELLIOT MOORE** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **4:15-cv-00062-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
|     **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff Elliot Moore ("Moore") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct and legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Moore filed his application for Title II Disability Insurance Benefits and Title XVI Supplemental Security income on September 21, 2011, alleging a disability

1

onset date of August 19, 2011 due to seizure disorder, low back pain, and high blood pressure. (R. 66, 296). After the SSA denied his application, Moore requested a hearing before an ALJ. The ALJ subsequently denied Moore's claim on July 12, 2013, (R. 66), which became the final decision of the Commissioner when the Appeals Council refused to grant review on December 11, 2014. (R. 1–4). Moore then filed this action pursuant to §205(g) of the Act, 42 U.S.C. §405(g), on January 14, 2015. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

5

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Moore had not engaged in substantial gainful activity since his application date and therefore met the criteria for Step One. (R. 68). Next, the ALJ acknowledged that Moore's severe impairment of "seizure disorder" met the requirements of Step Two. (R. 68). In this step, the ALJ also acknowledged the impairments of "a reducible small inguinal hernia, hypertension, organic mental disorder/affective disorder, and obesity," but determined that those were well controlled and mostly nonsymptomatic. (R. 68–69). The ALJ also found that there was no medical evidence that would support a finding of disability based on a back impairment, vision impairment, or speech impairment. (R. 69). The ALJ further found that Moore's characterization of the frequency of his seizures was inconsistent with his medical records and found him to be a less than credible

witness. (R. 74–75). The ALJ then proceeded to the next step and found that Moore did not satisfy Step Three because he "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 71)(internal citations omitted). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Moore has the residual functional capacity (RFC) to:

> sit, stand, walk, lift, carry, push, and pull without impairment caused limitations. He cannot work at heights that are unprotected; he cannot work around hazardous machinery; he cannot work on large, open bodies of water; and he cannot operate automotive equipment.

(R. 71). In Step Five, considering Moore's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Moore was capable of performing his past relevant work as a clean-up worker as it is "actually and generally performed." (R. 75). Therefore, the ALJ found that Moore "has not been under a disability, as defined in the Social Security act from August 23, 2011, through the date of this decision." *Id.*

## V. Analysis

The court now turns to Moore's contentions on appeal—i.e., that the Appeals Council erred in not considering the evidence supplied after the hearing,

that the ALJ erred in finding that Moore can perform his past work, and that the ALJ failed to state reasons for finding Moore not credible. Doc. 1. For the reasons below, the court rejects each of these contentions.

> *1. The Appeals Council properly reviewed the new and material evidence provided after the hearing in front of the ALJ*

Moore first argues that the Appeals Council failed to consider his new evidence relating to medical treatment from his attending physicians, but the record establishes otherwise. After the ALJ hearing, Moore submitted two sets of records: one relating to a fall from a ladder in 2008 and the others were a series of hospital visits that occurred after the ALJ hearing from July 29, 2013 until December 2013. (R. 8-36; 415-431). Moore provided no substantive argument regarding why these additional records should have caused the Appeals Council to remand the claim to the ALJ. Moore simply states that the Appeals Council review was "purely conclusory, and it epitomizes perfunctory adherence to the ALJ decision." (Doc. 1 at 2).

The Appeals Council is required to consider "new and material evidence that is related to the period on or before the date of the administrative law judge hearing decision" and "must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in record." *Gichuru v. Astrue*, No. 2:11-cv-04203-RDP, 2013 WL 1178723 (N.D.

Ala., March 20, 2013). Where the plaintiff challenges both the ALJ's decision to deny benefits and the decision of the Appeals Council to deny review based on new evidence, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). Moreover, the Appeals Council is not permitted to engage in a "perfunctory review" of the ALJ's decision, but must adequately evaluate the new evidence in making its decision. *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir. 1980). The Appeals Council is not, however, required "to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014).

In its notice to Moore, the Appeals Council stated that it accepted Moore's new evidence into the record and was denying review because the evidence did not trigger a remand under its rules. (R. 1, 6). This statement is consistent with Eleventh Circuit case law which requires only that the Appeals Council provide a statement stating that it has considered the additional evidence. *Mitchell,* 771 F.3d at 783; *Mansfiled v. Astrue,* 395 F. App'x 528, 530 (11th Cir. 2010); *Smith v. Comm'r of Soc. Sec. Admin.,* 272 F. App'x 789, 801 (11th Cir. 2008). Here, however, the Appeals Council actually explained why it rejected Moore's evidence. Specifically, the Appeals Council first determined that the evidence

relating to a 2008 hospital visit where Moore was treated for a fall off a ladder that bruised his hip was irrelevant to Moore's disability claims relating to his seizure and did not "provide a basis for changing the Administrative Law Judge's decision." (R. 2). Moreover, as the Commissioner points out in its brief, "these records do not indicate [Moore's] fall related to his seizure disorder or resulted in any significant or latent injury." Doc. 11 at 17.

The Appeals Council also determined that with respect to the medical records from July through December 2013, because that new evidence related to a date after the ALJ made his decision, it did not affect the ALJ's determination about whether Moore was disabled on or before July 12, 2013. (R. 2). The Appeals Council further stated that Moore could file a new claim based on the additional evidence that he supplied, as that evidence would relate to a disability onset of a later date. (R. 2).

In short, the Appeals Council clearly articulated the grounds for its denial of review even though it is not obligated to provide detailed explanations. *Mitchell,* 771 F.3d at 783. Accordingly, the court finds that the Appeals Council made its own review, did not perfunctorily accept the ALJ's determination, and it correctly decided that the ALJ's determination was not contrary to the weight of evidence currently on record. *Ingram,* 496 F.3d at 1253; *Mitchel,* 771 F.3d at 783.

### *2. The ALJ's denial of disability was supported by substantial evidence*

Moore appears to argue that the ALJ arbitrarily denied his claims because the ALJ did not specifically refer to every piece of evidence in making his decision. However, this circuit has held that, "[T]here is no rigid requirement that the [administrative law judge] specifically refer to every piece of evidence in his decision so long as our Court can conclude [that] the [administrative law judge] considered [the claimant's] medical condition as a whole." *Parks ex rel. D.P. v. Comm'r Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015). Relevant here, it is clear from the ALJ's opinion that he, in fact, considered the medical condition as a whole.

The ALJ found that Moore's impairment of seizure did not meet or medically equal listing-level severity. (R. 71). In determining that Moore's impairments did not qualify him as disabled, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence." (R. 71). He initially discussed Moore's history of inguinal hernia, hypertension, organic mental disorder/affective disorder, and obesity. (R. 68). He concluded that those symptoms constituted slight aberrations as neither Moore nor the medical record indicated any "ongoing or continuous restrictions due to these conditions" and they were well-controlled or non-symptomatic with his medications. (R. 69). The ALJ

also relied upon Moore's own testimony related to those symptoms, noting that Moore did not allege limitations due to obesity or his inguinal hernia. (R. 74).

The ALJ then made determinations regarding the weight afforded to the different sources of medical evidence. (R. 74). The ALJ gave significant weight to Dr. Robert Estock, although he did not examine Moore, because the regulation deemed Dr. Estock a highly qualified expert in Social Security disability evaluation and his opinion was consistent with the findings of the psychologist. (R. 74). He further determined that Dr. Sathyan Iyer should be afforded significant weight as he had actually examined Moore, but noted that Dr. Iyer did not find that Moore had any physical limitations other than those imposed by his seizures. (R. 73–74). Indeed, Dr. Iyer determined that Moore appeared to have no physical limitations and had "full range of motion of all the major joints without any restriction." (R. 353–55). The ALJ afforded little weight to the records from Quality of Life Health Services because most were treatment notes from a CRNP "without corroboration of an acceptable medical source." (R. 74). Finally, the ALJ gave no weight to the findings of the non-medical Single Decision Maker, and also gave little weight to the testimony of Moore's brother, since he did not live with Moore and was unable to observe the frequency of Moore's seizures. (R. 73–74).

All of this record evidence is consistent with the ALJ's conclusion that Moore has no severe impairments except for the seizure disorder. Because this

evidence supports the ALJ's determination that Moore's impairments did not disqualify him from his past work, and because the ALJ did not rely solely on the opinion of a non-examining physician, the court rejects Moore's arguments on this issue.

> *3. The ALJ did not err in determining that Moore could return to his previous employment*

Moore contends that the ALJ erred in failing to consider whether Moore's history of seizures impacted his ability to do past work. In this Circuit, the claimant must show the inability to do the previous type of work, not merely the specific type of job he or she held. *Jackson v. Bowen,* 801 F.2d 1291, 1293 (11th Cir. 1986). Moreover, "Social Security Ruling 82-61 provides that a claimant can return to past relevant work if she can perform the specific job she performed, either in the manner she performed it, or as it is usually performed in the national economy." *Dudley v. Apfel,* 75 F. Supp. 2d 1381, 1382 (N.D. Ga. 1999). The ALJ is required to assess the claimant's RFC, which is based upon the relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); *see also*, *Beech v. Apfel,* 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000) (the "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments."). In some cases, this may require that the ALJ engage in

a function by function analysis before expressing the type of work the claimant is able to perform. *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863 (11th Cir. 2011).

Here, the ALJ relied upon the testimony of the VE in assessing Moore's ability to return to his previous work. In order for the testimony of a VE to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, "the hypothetical need only include 'the claimant's impairments," not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270; *see also*, *McSwain v. Bowen,* 814 F.2d 617, 620 n. 1 (11th Cir. 1987) (ALJ did not err in failing to include limitations that did not affect the work claimant could do); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986)(ALJ did not err in failing to include in hypothetical question limitations that did not significantly effect the level of work the claimant can do).

In his hypothetical to the VE, the ALJ appropriately included Moore's age, education and past relevant work. The ALJ then specifically stated:

> I want you to assume that, because of the medically documented impairments in this record, the individual can sit, stand, walk, lift, carry, push and pull without impairment-caused limitation, but the individual does have non-exertional limitations related to the seizure disorder. And so, this individual cannot work at heights that are unprotected; cannot work around

> hazardous machinery; cannot work on large open bodies of water; cannot operate automotive equipment. It's the typical seizure restrictions.

(R. 119). This hypothetical clearly contained Moore's restrictions relating to his seizure disorder and was designed to elicit testimony as to whether jobs existed that Moore could perform. Further, the VE sat through the entire hearing, and thus heard all of the testimony, including Moore's testimony about the frequency of his seizures as well as his other reported symptoms of back pain and vision impairment. (R. 83). The VE testified that based on Moore's seizure disorder, that Moore could return to his previous work as a clean-up worker, and also explained why Moore's other past work would be inappropriate: "I think the others would be ruled out either due to the hazardous machinery or working at heights." (R. 119). Moreover, the VE explicitly accounted for the way in which Moore had previously performed his job as a clean-up worker: "He's worked as a—it's classified as a clean-up worker, basically collecting trash as he's indicated. […] He indicated that he did it at—or performed it at the light level, but typically would be medium but can be performed at light." (R. 118).

In short, the ALJ and VE clearly took into account Moore's documented limitations in making an assessment of Moore's ability. Therefore, substantial evidence supports the ALJ's assessment that Moore could return to his past work as a clean-up worker.

*4. The ALJ stated adequate reasons for discrediting Moore's testimony*

Moore alleges that the reasons given by the ALJ for finding him not credible are inadequate, but provides no rationale or explanation for these allegations. Where the ALJ discredits subjective testimony, he must "articulate explicit and express reasons for doing so." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002)(per curiam). Moreover, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam). A failure to provide articulated reasons, however, requires that the testimony be accepted as true. *Wilson,* 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

Here, the ALJ found that the medical records did not support Moore's subjective claims of the frequency of his seizures or a finding of disability relating to vision impairment, back pain, or obesity. (R. 69). With respect to Moore's claims of the frequency of his seizures, the ALJ based his credibility determination upon the medical records, finding that Moore's testimony about the frequency of his seizures was inconsistent with the statements he made to medical practitioners. (R. 72–73, 353–55, 363). The ALJ also challenged Moore's credibility with respect to the medication Moore used to alleviate his symptoms. The ALJ referenced numerous medical records that found that Moore had less than the therapeutic

range of medication in his blood tests and noted the discrepancies between Moore's statements that he never missed a dosage and pharmaceutical records indicating the opposite. (R. 73, 333, 339). Next, the ALJ noted that even though Moore is attempting to demonstrate that he is disabled as a result of back problems, Moore did not allege any physical limitations at his hearing and the "medical records show a history of lumbago, but do not indicate any underlying back impairment." (R. 69). Finally, the ALJ also noted that Moore's impaired vision was self-reported as corrected when he wore his reading glasses. (R. 69).

Based on the court's review of the record, it is readily apparent that the ALJ thoroughly recounted Moore's medical records and pointed to various examples where Moore's subjective testimony contradicted his medical records. (R. 72–73). Accordingly, the court concludes that the ALJ clearly articulated his reasons for finding Moore not credible. *See*, *Wilson v. Barnhart*, 284 F.3d at 1226 (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Moore is not disabled and can perform his past relevant work is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching

17

this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.

A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 18th day of September, 2015.

                                              **ABDUL K. KALLON**
                                     UNITED STATES DISTRICT JUDGE